**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **BOBBY BUSZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:20-cv-00398-SLC** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

*Pro se* Plaintiff Bobby Busz appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying his application under the Social

Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI").  (ECF 1).  Busz filed his opening brief on June 21, 2021 (ECF 20), the

Commissioner filed her response brief on August 3, 2021 (ECF 22), and Busz filed a reply brief

on September 9, 2021 (ECF 23).  Busz also filed various "supplements" and "letters," which the

Court has reviewed.  (ECF 8, 14, 16, 21, 24, 26, 27).  For the following reasons, the

Commissioner's decision will be REVERSED, and the case will be REMANDED to the

Commissioner for further proceedings in accordance with this Opinion and Order.

**I.  FACTUAL AND PROCEDURAL HISTORY**

 Busz applied for DIB and SSI in August 2017, alleging disability as of January 5, 2015,

which he later amended to June 30, 2017.[1]  (ECF 18 Administrative Record ("AR") 21, 255,

318).  Busz's claim was denied initially and upon reconsideration.  (AR 128-29, 162-63).  On

---

[1] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files her SSI application.  *See* 20 C.F.R. § 416.335.  Therefore, the first month Busz could be eligible to receive SSI is September 2017, given that he applied for SSI in August 2017.

August 28, 2019, administrative law judge ("ALJ") Stephanie Katich conducted an administrative hearing at which Busz, who was represented by counsel at the time, and a vocational expert ("VE") testified.  (AR 40-84).  On September 17, 2019, the ALJ rendered an unfavorable decision to Busz, concluding that he was not disabled because he could perform a significant number of jobs in the national economy despite the limitations caused by his impairments.  (AR 21-34).

Busz requested review by the Appeals Council, submitting additional evidence and a statement in support.  (*See* AR 1, 12, 16, 254, 323).  The Appeals Council stated this evidence consisted of:  (1) fives pages of medical evidence form Ortho Northeast dated December 2017 to April 2019;[2] (2) one undated page of medical evidence from Neighborhood Health Clinics; (3) ten pages of medical evidence from Summit Pain Management dated August 2019; and (4) one page of medical evidence from Ortho Northeast, dated November 2017 to March 2018.  (AR 12).  On August 31, 2020, the Appeals Council denied Busz's request for review (AR 1-5), at which point the ALJ's decision became the final decision of the Commissioner.[3]  *See* 20 C.F.R. §§ 404.981, 416.1481.

Busz filed a complaint *pro se* with this Court on November 9, 2020, seeking relief from the Commissioner's decision.  (ECF 1).  Reading Busz's opening brief and supplement generously, Busz seems to argue that the ALJ erred by:  (1) failing to find that his musculoskeletal problems

---

[2] The Appeals Council found that this evidence from Northeast Ortho was not new because it was already in the record.  (AR 12 (citing AR 563-85, 689-720)).

[3] Also of record is Busz's one-page correspondence received by the Commissioner on November 20, 2020, seeking an extension of time to file an appeal with the Court.  (AR 7).  It appears that Busz submitted with that correspondence:  (1) a letter from his doctor at Neighborhood Health Clinics dated October 26, 2020, stating that he is "unemployable" (AR 8); and (2) a letter from Indiana Family & Social Services Administration deeming him "medically frail" (AR 9).

(specifically, his back pain and carpal tunnel syndrome) and his bipolar disorder (together with his other mental impairments) "automatically qualify" him as disabled; (2) failing to consider that he has a prescription for his cane and wrist braces; (3) failing to conclude that he could not stand or sit eight hours a day due to his back problems; and (4) failing to conclude that his mental health symptoms stemming from a bipolar disorder, depression, anxiety and other mental problems prevent him from working eight hours a day.  (ECF 20 at 1-2; ECF 21 at 1).  To the extent that Busz submitted new evidence with his arguments, he also contends that such evidence constitutes additional grounds to find him disabled.  (ECF 16, 24).

At the time of the ALJ's decision, Busz was forty-seven years old (AR 255), had a ninth grade education with some special education classes (AR 282), and had past relevant work experience as a racker, press operator, grinder, and coating machine operator (AR 32, 282).  In his application, Busz alleged disability due to a bipolar disorder, post traumatic stress disorder, depression, severe anxiety, sciatica/herniated disc, learning disability, memory loss, nerve damage, and restless leg disorder.  (AR 281).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869

3

(7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB or SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work; and (5) whether he is incapable of

performing any work in the national economy.[4]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th

Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the

next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v.*

*Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three

stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof

lies with the claimant at every step except the fifth, where it shifts to the Commissioner.

*Clifford*, 227 F.3d at 868.

### B.  The Commissioner's Final Decision

On September 17, 2019, the ALJ issued a decision that ultimately became the

Commissioner's final decision.  (AR 21-34).  As a preliminary matter, the ALJ noted that Busz

was last insured for DIB on June 30, 2017.  (AR 21, 277).  Thus, as to DIB, he must establish

that he was disabled as of that date.  *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.

1997) (explaining that a claimant must establish that he was disabled as of his date last insured in

order to recover DIB).

At step one, the ALJ concluded that Busz had not engaged in substantial gainful activity

after his amended alleged onset day of June 30, 2017.  (AR 23)  At step two, the ALJ found that

Busz had the following severe impairments:  degenerative disc disease of the lumbar spine,

status post lumbar laminectomy, post laminectomy syndrome, bilateral carpal tunnel

syndrome/tendinitis, status post right carpal tunnel release, major depressive disorder,

intermittent explosive disorder, panic disorder, social anxiety disorder, "mild" intellectual

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks he can do despite his limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

disability (provisional diagnosis), mood disorder, alcohol use disorder (in sustained remission), and bipolar disorder.  (AR 23-24).  At step three, the ALJ concluded that Busz did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (AR 25).

Before proceeding to step four, the ALJ determined that Busz's statements about the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 29).  The ALJ then assigned Busz the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant uses a cane to walk any distance in one upper extremity, he can lift and/or carry weight (within the light exertional level) with the unoccupied upper extremity, he can occasionally climb ramps and stairs, he can never climb ladders, ropes, scaffolds, he can occasionally balance, stoop, kneel, crouch and crawl, and he should avoid all exposure to wet, slippery or uneven surfaces, unprotected heights, and unguarded moving machinery.  In addition, the claimant can understand, remember and carry out simple instructions and tasks, make judgments on a simple work-related decisions, respond appropriately to occasional and superficial interactions with or in close proximity to the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting; he can frequently handle and finger using the bilateral upper extremities.

(AR 27).

The ALJ found at step four that given the foregoing RFC, Busz could not perform any of his past relevant work.  (AR 32).  At step five, however, the ALJ concluded that Busz could perform a significant number of unskilled, light-exertional jobs in the national economy, including mail clerk, office helper, and sorter.  (AR 32-33).  Therefore, Busz's applications for DIB and SSI were denied.  (AR 33-34).

### C.  Lumbar Spine Impairment

Busz first argues that his lumbar spine impairment "automatically qualif[ies]" him for disability benefits.  (ECF 20 at 1).  Thus, Busz is apparently challenging the ALJ's step-three

determination that his lumbar spine impairment did not meet or equal listings 1.04, disorders of the spine, and 11.14, peripheral neuropathies.  (*See* AR 25).

"Under a theory of presumptive disability, a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment found in the Listing of Impairments."  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1)).  "The listings specify the criteria for impairments that are considered presumptively disabling."  *Id*. (citing 20 C.F.R. § 404.1525(a)).  To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment.  *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  The claimant bears the burden of proving his condition meets or equals a listed impairment.  *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380.  Having said that, "an ALJ should mention the specific listings [she] is considering and [her] failure to do so, if combined with a 'perfunctory analysis,' may require a remand."  *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The ALJ first discussed listing 1.04, disorders of the spine, stating:

> The evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing. . . .  Although mild nerve root compression was noted on lumbar spine imaging in March 2018, the clinical reports show no manifestations such as motor loss accompanied by sensory or reflex loss as required by this listing.

(AR 25) (citation omitted).  Busz fails to point to evidence of spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication, which eliminates listings 1.04B and 1.04C.  But as the ALJ acknowledged, the record does contain evidence of mild nerve root compression as required by listing 1.04A (AR 25, 569), which necessitates a closer look at this listing.

The criteria of listing 1.04A was:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04.[5]

Here, the ALJ quickly disposed of listing 1.04A, stating cursorily that "the clinical reports show no manifestations such as motor loss accompanied by sensory or reflex loss as required by this listing."  (AR 25).  But "[t]his type of analysis is the very type of perfunctory analysis the Seventh Circuit [Court of Appeals] has repeatedly found inadequate to dismiss an impairment as not meeting or equaling a listing." *Jonie G. v. Saul*, No. 18 CV 50100, 2019 WL 6716610, at *3 (N.D. Ill. Dec. 10, 2019) (citation and internal quotation marks omitted) (characterizing the ALJ's step-three analysis as perfunctory where the ALJ merely recited the criteria of each listing and stated that the plaintiff's impairments failed to meet each criteria of the listing); *see also Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015).

Further, the evidence of record and the ALJ's own statements, at least to some extent, undercut the ALJ's perfunctory conclusion at step three.  (AR 25, 29).  There are numerous notes of record revealing some lower extremity strength deficits (*see, e.g.*, AR 492, 495, 497-98, 574, 576, 581, 690, 710), sensory or reflex deficits (*see, e.g.*, AR 492, 495, 594), positive straight leg

---

[5] Listing 1.04A has since been incorporated into Listing 1.15.  *See, e.g.*, *McPherson v. Kijakazi*, No. 1:20CV710, 2021 WL 5889988, at *5 n.6 (M.D.N.C. Dec. 13, 2021) (R. & R.) (citing Rescission of Acquiescence Ruling 15-1(4), 85 FR 79063, 2020 WL 7209986 (Dec. 8, 2020)).

raising tests in both sitting and supine (*see, e.g.*, AR 527, 550, 574, 579, 593, 690, 710), and range of motion limitations (*see, e.g.*, AR 595, 705, 714). While some of this evidence pre-dates Busz's November 2017 laminectomy (*see, e.g.*, AR 492, 495, 497-98, 527), not all of it does (*see, e.g.*, AR 550, 574, 576, 579, 581, 593-95, 690, 705, 710, 714). In fact, the ALJ discusses this evidence of clinical deficits at step two (AR 24) and when considering the RFC (AR 29), yet improperly ignores them in the step-three discussion. *See Richards v. Saul*, No. 1:19-cv-153-PPS, 2020 WL 2190636, at *2-3 (N.D. Ind. May 6, 2020) ("Treatment notes show that [the claimant] had limited range of motion in his lumbar spine and lower extremities; motor loss indicated by extremity weakness and atrophy; and absent and diminished reflexes in the lower extremities. All of these findings could support the elements of Listing 1.04(A) and therefore require a more in depth analysis at step three." (citations omitted)).

Granted there are other records showing normal lower extremity strength at times *(see, e.g.*, AR 527, 550, 594, 649, 658, 669), and normal sensation and reflexes (*see, e.g.*, AR 594, 649, 658, 669, 719). Also, some examiners questioned the effort Busz put forth during examinations. (*See, e.g.*, AR 498, 559, 561). But given the deficits of record, the criteria of listing 1.04A merits more than perfunctory discussion at step three.[6] And importantly, the ALJ's discussion of Busz's lumbar spine impairment elsewhere in the decision does not sufficiently fill the gap

---

[6] The same applies to the criteria of listing 11.14, peripheral neuropathies. With respect to Busz's lumbar spine impairment, listing 11.14 requires "a disorganization of motor function in two extremities resulting in 'extreme limitation in the ability to stand up from a seated position [or] balance while standing or walking . . . .'" *Johnson v. Colvin*, No. 1:16-cv-00429-TWP-MJD, 2016 WL 8668501, at *3 (S.D. Ind. Dec. 2, 2016) (R. & R.) (quoting 20 C.F.R. Part 404, Subpart P, App'x 1 § 11.14)). "In the alternative, to meet the criteria for 11.14, a claimant must have marked limitation in both physical functioning and one of the following: 1.) understanding, remembering, or applying information; 2.) interacting with others; 3.) concentrating, persisting, or maintaining pace; or 4.) adapting or managing onself." *Id.* Here, the ALJ simply recited the criteria of listing 11.14 at step three, but never analyzed the evidence with respect to that listing. (*See* AR 25). Nevertheless, it is apparent that Busz does not satisfy either rendition of listing 11.14, as the evidence of record does not reveal an "extreme" limitation in his ability to stand up from a seated position or balance while standing or walking. And as will be discussed *infra*, nor does the record reflect a "marked" impairment in one of the "paragraph 3" mental criteria.

9

regarding listing 1.04A.[7]

To explain, the ALJ cherry-picked the evidence when concluding in the RFC that Busz could stand or walk six hours in an eight-hour workday.  In doing so, the ALJ stated that "there are no real objective findings over multiple examinations such as ongoing deficits in motor/sensory function or weakness of the extremities to warrant greater functional limitations [than imposed in the RFC.]"  (AR 29).  To support this outcome, the ALJ noted that two weeks after back surgery Busz "had significantly improved" and that nine weeks after back surgery, he had a positive straight leg raise test on the left and 4/5 strength in the left lower extremity, but otherwise normal findings.  (*Id.*).  The ALJ further observed that in March 2018, Busz had a positive straight leg raise on the left, lumbar stiffness, diminished sensation in the left lower extremity, and limited range of motion in the lumbar spine, but otherwise normal findings.  (*Id.* (citing AR 587-96)).  Additionally, the ALJ noted that in December 2018 and early-to-mid 2019 Busz reported that his pain medications helped to decrease his pain and improve function without significant side effects (AR 29-30 (citing AR 689, 709); *see also* AR 713).  Finally, the ALJ recited that in June 2019, Busz displayed normal sensory, reflexes, and motor function in the left lower extremity, limited lumbar range of motion, and use of a cane.  (AR 30 (citing AR 719)).

The ALJ omitted, however, that the December 2018 to June 2019 records also revealed a positive straight leg raise test for radicular pain in the L4 and L5 distribution, reduced strength in

---

[7] "There is no requirement of . . . tidy packaging; . . . we read the ALJ's decision as a whole and with common sense."  *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted). Accordingly, "when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing.  And . . . [t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant." *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (second and third alterations in original) (citation and internal quotations marks omitted)); *see also Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021).

the left leg, and diagnoses of postlaminectomy syndrome,[8] lumbar radiculitis, and lumber

herniated disc.  (AR 690-91).  In fact, Busz reported to his orthopedist in June 2019 that his

condition "had worsened," and he was experiencing a "stabbing pain" he rated as a "10" on a

ten-point scale and "numbness/tingling."  (AR 718).  Further, the ALJ discounted the opinions of

both Stephen Parker, M.D., a consultative examiner, and the reviewing state agency physicians,

who all opined that Busz could stand or walk just two hours in an eight-hour workday using a

cane.  (AR 31; *see* AR 108-09, 139-40, 155-56, 592-93; *see also* AR 588).  In doing so, the ALJ

cited "a lack of significant lower extremity findings at [Busz's] most recent orthopedic

examinations as well as [his] reports of decreased pain and improved function in 2019."  (AR 31

(citing AR 689-720)).

    While Busz did report that his pain medications were helping to reduce his pain and

improve his function in December 2018 to June 2019, he still rated his pain as an "8" or "10"

and stated that it occurred all the time.  (AR 689, 718).  He also demonstrated decreased left

lower extremity strength and a positive straight left leg raise for radicular pain.  (AR 690-91).

Furthermore, "improvement can occur without enabling claimant to perform full-time

competitive work."  *Deloris J. on Behalf of Devonte J. v. Saul*, No. 1:19-CV-30-WCL-JPK, 2019

WL 7669924, at *6 (N.D. Ind. Dec. 19, 2019); *see Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir.

2014) (notes that the claimant is "stable" or "improving" does not necessarily equate to the

ability to perform competitive work).  Given this mixed evidence and the medical source

opinions, the ALJ did not build an accurate and logical bridge when assigning an RFC for

standing or walking up to six hours in an eight-hour workday.  *See Mayer v. Comm'r of Soc.*

---

[8] Postlaminectomy syndrome is another name for "failed back surgery syndrome."  *See, e.g.*, William F. Micheo, MD, Fernando L. Sepulveda, MD, Roxana Amill, MD, Post-laminectomy Pain, PM&R Knowledge NOW (Feb. 21, 2018),  https://now.aapmr.org/post-laminectomy-pain/.

*Sec.*, No. 13-CV-2067, 2014 WL 3493649, at *4 (C.D. Ill. July 14, 2014) ("There is no logical bridge between Plaintiff's slight improvement . . . and the ALJ's conclusion that he could perform full-time work in a competitive environment.").

Consequently, this is a case in which both the ALJ's step-three discussion about listing 1.04A[9] and the RFC analysis is inadequate with respect to Busz's lumbar spine impairment. *Compare Minnick*, 775 F.3d at 935-38 (finding the ALJ's step-three determination and the RFC analysis were both deficient), *with Zellweger*, 984 F.3d at 1255 ("[T]he RFC analysis is extensive and supports the ALJ's determination that [the claimant] is not per se disabled under Listing 1.04."). While Busz seems to ask the Court to reverse the Commissioner's decision and remand for an outright award of benefits (ECF 20), "[a]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citations omitted); *see also Bray v. Astrue*, No. 2:10-CV-00352, 2011 WL 3608573, at *10 (N.D. Ind. Aug. 15, 2011). Here, the record does not "yield but one supportable conclusion" in Busz's favor. *Briscoe ex rel. Taylor*, 425 F.3d at 355. Therefore, a remand is warranted so that the ALJ may properly consider and adequately articulate the criteria of listing 1.04A or its revised equivalent. Further, the ALJ is encouraged upon remand to revisit the physical RFC after fair consideration of the evidence of record concerning Busz's lumbar spine impairment and the amount of time he is able to stand or

---

[9] As a final point, an ALJ may rely on the opinions of the state agency doctors as to whether a claimant meets or equals a listing at step three and provide little explanation, so long as there is no contradictory evidence in the record. *Ribaudo*, 458 F.3d at 584; *see Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (stating that Disability Determination and Transmittal forms completed by the state agency physicians conclusively established that the claimant did not medically equal Listing 1.05). Here, however, the latest review by a state agency physician was in July 2018 (AR 141, 157), and thus, the state agency physicians did not see any records dated after that time nor Busz's diagnoses of postlaminectomy syndrome. These later records could have materially impacted the state agency physician's opinions. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (finding error where new evidence "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician").

walk during an eight-hour workday.[10]

### D.  Carpal Tunnel Syndrome

Busz also argues that his carpal tunnel syndrome "automatically qualif[ies]" him for disability benefits.  (ECF 20 at 1-2).  Thus, Busz seems to assert that the ALJ erred by failing to find that he met or equal listings 1.02, major dysfunction of a joint, and 11.14, peripheral neuropathy, based on his carpal tunnel syndrome symptoms.  Busz, however, fails to carry his burden of showing that he met all the criteria of these listings.

At step three, the ALJ discussed listing 11.14, but did not mention listing 1.02.[11]  Listing 1.02 required a gross anatomical deformity and an inability to perform fine and gross movements effectively in one major peripheral joint in each upper extremity.  20 C.F.R. Part 404, Subpart P, App'x 1 § 1.02; *see, e.g., Kirby v. Colvin*, No. 2:14-cv-252-WTL-MJD, 2015 WL 3862524, at *11 (S.D. Ind. June 22, 2015).  "Examples of the limitations are the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Bunch v. Colvin*, No. 2:14CV00009-JJV, 2014 WL 4467275, at *2 (E.D. Ark. Sept. 10, 2014)

---

[10] Ultimately, it appears that the ALJ's limitation in the RFC to light work requiring the ability to walk or stand six hours in an eight-hour workday, rather than a limitation to sedentary work requiring the ability to stand or walk just two hours in an eight-hour workday, may not change the outcome in this instance.  This is because one of the three representative jobs that the ALJ concluded Busz could perform—sorter—was a sedentary job, and the VE testified that there were 75,000 sorter jobs available nationally.  (AR 75).  While the Seventh Circuit has yet to speak on the issue, the undersigned Magistrate Judge has concluded in at least one prior case that an amount less than 75,000 is still a significant number of jobs for purposes of step five.  *See Zych v. Comm'r of Soc. Sec.*, No. 1:20-cv-00414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 16, 2021) (concluding that 41,000 jobs nationally was a significant number of jobs), *appeal docketed*, No. 22-1058 (7th Cir. Jan 13, 2022).  Nevertheless, upon remand, the ALJ is encouraged to reexamine the physical RFC and the medical opinion evidence concerning the amount of time Busz is able to stand and walk during an eight-hour workday.

[11] Listing 1.02 has since been incorporated into listing 1.18.  *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 83 Fed. Reg. 20646-01, 2018 WL 2086894, (proposed May 7, 2018) (proposing "[t]o remove . . . 1.02 and 101.02 Major dysfunction of joint(s) (due to any cause) and incorporate the provisions in . . . 1.18 and 101.18 Abnormality of a major joint(s) in any extremity"), Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01 (Dec. 3, 2020) (adopting proposed rule).

(citation and internal quotation marks omitted).  Similarly, listing 11.14 with respect to Busz's carpal tunnel syndrome required that he have an "extreme limitation in the ability to use both hands."[12]  *Hapner v. Saul*, No. 3:18CV360-PPS, 2019 WL 4316735, at *3 (N.D. Ind. Sept 12, 2019) (internal quotation marks omitted).  The listings define "extreme limitation" as "a loss of function of both upper extremities . . . that very seriously limits [a claimant's] ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements."  *Id.* (citing 20 C.F.R. Part 404, Subpart P, App'x 1 § 11.00(D)(2)(c)).

Busz does not point to a gross anatomical deformity to satisfy listing 1.02.  *See Morgan v. Berryhill*, No. 4:17-CV-04021, 2018 WL 4409395, at *3 (W.D. Ark. Sept 17, 2018) (finding that the claimant's carpal tunnel syndrome did not qualify as a "gross anatomical deformity" for purposes of listing 1.02); *Johnson v. Comm'r of Soc. Sec. Admin*, No. SAG-14-1370, 2015 WL 7254188, at *2 (D. Md. Nov. 17, 2015) (same).  And even if his carpal tunnel syndrome did qualify as such, Busz merely asserts in his brief that it affects his handwriting and that he wears wrist braces (ECF 20 at 1-2)—assertions which on their own fail to rise to the level of severity set out in either listing.

Turning to the medical evidence, a consultative exam in March 2018 reflected that Busz could repetitively pick up a coin, button a shirt, tie shoes, and write with a pencil, but not zip a zipper, open a jar, or grip and grasp objects; he had full grip strength and no muscle atrophy. (AR 589, 594; *see also* AR 699).  The state agency physicians opined in March 2018 and July 2018 that Busz could lift and carry ten pounds frequently and twenty pounds occasionally with no manipulative limitations.  (AR 108-09, 139-40, 155-56).  Busz underwent a right carpal

---

[12] Alternatively, to meet criteria 11.14 Busz must show a "marked" limitation in both physical functioning and one of the "paragraph B" criteria discussed *supra* in footnote 6.

tunnel release surgery about a year later in December 2018.  (AR 46, 696-700).  At the hearing,

Busz stated that surgery did not improve his symptoms much, and thus, he is hesitant to undergo

surgery on his other wrist though his provider recommends he do so.  (AR 46).  He states that he

still wears wrist braces bilaterally, which are helpful but impair his ability to cook and get

dressed.[13]  (AR 46, 63-64, 696-700).  He testified that he "can't really grip things for very long

periods of time."  (AR 52).

Ultimately, the ALJ discounted the state agency doctors' opinions, finding Busz was

more limited by his carpal tunnel syndrome than they opined, yet still not as limited as Busz

claimed.  (AR 31).  The ALJ concluded that Busz could "frequently handle and finger using the

bilateral upper extremities" (AR 27), which means one-third to two-thirds of the workday, SSR

83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  "ALJs often include frequent handling and

fingering limitations in the RFCs of claimants with severe carpal tunnel syndrome."  *Harris v.

Kijakazi*, No. 20-cv-639-jdp, 2021 WL 3124207, at *3 (W.D. Wis. July 23, 2021) (collecting

cases); *see also Tritch v. Kijakazi*, No. 1:20-cv-00331-SLC, 2021 WL 4438188, at *6 (N.D. Ind.

Sept. 28, 2021).

Therefore, Busz has failed to carry his burden of showing that his carpal tunnel syndrome

satisfies all of the criteria of listings 1.02 and 11.14.[14]  *See, e.g.*, *Hapner*, 2019 WL 4316735, at

---

[13] To the extent Busz suggests that the ALJ failed to consider that he wears prescription wrist braces or that wearing wrist braces automatically qualifies him for disability, his arguments are without merit.  The ALJ expressly considered that Busz wore wrist braces at the hearing and his testimony that he had been wearing wrist braces for the past two years. (AR 28, 63-64, 66-67).  "The fact that [the claimant] received braces for both wrists, without more, does not demonstrate disabling limitations of both hands."  *Jones v. Saul*, No. 3:19-CV-0880-BH, 2020 WL 5752390, at *18 (N.D. Tex. Aug. 24, 2020).

[14] While Busz does not specifically challenge the fingering or handling limitations assigned in the RFC, the ALJ is nonetheless encouraged upon remand to more clearly articulate her reasoning with respect to the assigned RFC and the fine finger skill deficits identified in Dr. Parker's March 2018 opinion, which reflect that Busz could not zip, open a jar, or grip and grasp objects.  (AR 589).

15

*3) (affirming the ALJ's conclusion that the claimant did not meet or equal listing 1.02 where the evidence failed "to establish that the claimant is unable to perform fine and gross movements effectively").

### E.  Bipolar Disorder and Other Mental Impairments

Busz also contends that his bipolar disorder and other mental impairments "automatically qualify" him for disability, and that in any event, his mental symptoms preclude him from consistently performing full-time employment.  (ECF 20 at 1).  Busz's argument, however, lacks supporting evidence.

Contrary to Busz's assertion, "a mere diagnosis of [a bipolar disorder or other mental condition] is not sufficient to demonstrate that the illness is severe" enough to satisfy one of the mental health listings 12.04, depressive, bipolar and related disorders; 12.05, anxiety and obsessive-compulsive disorders; 12.08, personality and impulse-control disorders; 12.11, neurodevelopmental disorders; or 12.15, trauma and stressor related disorders.  *Keach v. Berryhill*, No. 17-cv-10133-ADB, 2018 WL 1440316, at *13 (D. Mass. Mar. 22. 2018); *see also Smith v. Berryhill*, No. 16 C 11211, 2018 WL 2718043, at *5 (N.D. Ill. June 6, 2018); *Sangas v. Shalala*, No. 94 C 1473, 1995 WL 76862, at *3 (N.D. Ill. Feb. 17, 1995).  Rather, as the ALJ explained, a claimant must also satisfy the "paragraph B" criteria or "paragraph C" criteria.

> To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.

(AR 25-26).  To satisfy the "paragraph C" criteria, a claimant must show a medically

documented history of a serious and persistent mental disorder over a period of at least two

years, plus "medical treatment, mental health therapy, psychosocial support(s) or a highly

structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the

claimant's] disorder;" and "[m]arginal adjustment, that is . . . minimal capacity to adapt to

changes in [the claimant's] environment or to demands that are not already part of [the

claimant's] daily life." *Phillip B. v. Saul*, No. 1:19-cv-00972-MJD-SEB, 2019 WL 6887775, at

*4-5 (S.D. Ind. Dec. 17, 2019) (alterations in original) (citing 20 C.F.R. Part 404, Subpart P,

App'x 1 § 12.04(c), 12.06(C), 12.15(C)).

As to the "paragraph B" criteria, the ALJ found at step three that Busz had "moderate"

limitations in understanding, remembering, or applying information; interacting with others; and

concentrating, persisting, or maintaining pace; and "mild" limitations in adapting or managing

oneself.  (AR 26).  As to the "paragraph C" criteria, the ALJ stated that "[t]he evidence does not

demonstrate that the claimant has marginal adjustment or minimal capacity to changes in his

environment or to demands that are not already part of his daily life."  (*Id.*).  Consequently, the

ALJ concluded that Busz did not satisfy listings 12.04, 12.06, 12.08, 12.11, or 12.15.  (AR 25).

After the ALJ concluded that Busz did not satisfy any of the mental health listings, she went

on to assign him the following mental RFC:  "[T]he claimant can understand, remember and

carry out simple instructions and tasks, make judgments on simple work-related decisions,

respond appropriately to occasional and superficial interactions with or in close proximity to the

general public, he can respond appropriately to usual work situations, and he can deal with

routine changes in a routine work setting[.]"[15] (AR 27).  In arriving at this mental RFC, the ALJ

---

[15]  At the hearing, however, the ALJ included even more conservative social limitations in the hypotheticals posed to the VE:  "[The claimant] can respond appropriately to occasional and superficial interactions with coworkers and supervisors.  He should avoid work activity requiring interactions with or in close proximity to the

reasoned:

> Although the claimant has . . . a history of difficulty with social functioning, there are no real objective findings over multiple examinations . . . to warrant greater functional limitations.  In addition, he has not had any recent legal problems relating to anger management.  Moreover, the claimant no longer takes medication for his psychological symptoms and has not received mental health counseling/therapy in over six months, due to improvement in suicidal ideation according to his testimony.  Consistent with this, the record does not reflect escalation of his psychological symptoms without mental health treatment.

(AR 29).  Later in the decision the ALJ additionally explained:

> In terms of mental health issues, the claimant was hospitalized for about four days in August 2017 due to suicidal thoughts and mood disorder.  He has been treated with medication and counseling/therapy to treat depression and anxiety-related disorders, but testified he is no longer receiving mental health treatment because his suicidal ideation resolved.

(AR 30 (citations omitted)).

To briefly summarize the medical evidence, the record reveals that at a psychiatric evaluation in January 2017, Busz had been out of his medication for six months and was having severe mood swings, anger problems, suicidal ideation, and trouble sleeping.  (AR 613).  In August 2017, he was hospitalized at Parkview Behavioral Health after attempting to commit suicide.[16]  (AR 464, 477, 491).  However, a treatment note in June 2018 revealed that his mood was "much better," that he denied side effects from his medications, and that his depression, anxiety, and insomnia were "controlled."  (AR 602-03).  He had good attention and

---

general public."  (AR 73-74).  "Where the hypothetical differs from RFC by presenting a scenario that is more favorable to the claimant (incorporating more functional limitations tha[n] the RFC), it can still serve as substantial evidence supporting the ALJ's decision."  *Hoag v. Saul*, No. 1:18-cv-02842, 2019 WL 7040607, at *13 (N.D. Ohio Sept. 27, 2019) (collecting cases).  "Correcting the ALJ's error so that the RFC and hypothetical match would not create an outcome more favorable to [the claimant], because if the VE found [him] capable of performing jobs under the more restrictive hypotheticals, removing restrictions so the hypotheticals match the RFC determination will not make [him] less capable of work."  *Id.*

[16] There are a few records that suggest Busz was hospitalized twice during the relevant period for suicide attempts, though the record contains medical evidence from just one inpatient stay.  (AR 557, 559; *see* AR 464-85).

concentration, fair judgment, euthymic mood, appropriate affect, and no suicidal ideation or

hallucinations.  (AR 605).  He was to return in three months.  (AR 606).  At the hearing in

August 2019, Busz testified that he had not received mental health treatment in the past six

months because he felt like he was "pretty much over that stage" of "suicide attempts."  (AR 53).

He admitted that going to counseling and taking medications were helpful to him previously, and

that he had health insurance throughout the relevant period.  (AR 53-54).  He claimed, however,

that he could not work from a mental health perspective due to sleepiness from his medications,

anger problems, and outbursts from frustration.  (AR 55-56, 65-66).  But as the ALJ noted, Busz

did not complain of medication side effects to his providers.  (AR 29-30; *see* AR 689-92, 709).

The ALJ also considered the opinions of the state agency psychologists who reviewed

Busz's record in December 2017 and July 2018 (AR 105-06, 109-10, 137-38, 141-42, 153-54,

157-58) and Leslie Predina, Ph.D., H.S.P.P., the consulting psychologist who examined Busz in

December 2017 (AR 558-62).  (AR 31-32).  The state agency psychologists opined that despite

Busz's moderate deficits in attention and concentration, he could still "understand, remember,

and carry-out unskilled tasks," "relate on at least a superficial and ongoing basis with co-workers

and supervisors," "attend to tasks for sufficient periods of time to complete tasks," and "manage

the stresses involved with unskilled work."  (AR 110, 142, 158).  Dr. Predina opined that while

Busz appeared to "put little effort into his responses" and have the cognitive ability to perform

comparable jobs to his past work, he "would likely have some problems recalling tasks on a

job," "would likely have some problems being able to concentrate and persist on his job

responsibilities," and would "likely struggle to get along with his supervisors and coworkers due

to his reported mental health issues."  (AR 562).  In considering these opinions, the ALJ found

the state agency's mental assessment "consistent with the claimant's mental health treatment

record and hearing testimony that he no longer receives mental health treatment," and that Dr.
Predina's opinion "supports memory, concentration, persistence and social interaction
limitations in the [RFC]."  (AR 31-32).

Having reviewed the relevant evidence and medical source opinions, it is clear that Busz has
failed to produce evidence showing that his mental health symptoms are of the severity
necessary to satisfy listings 12.04, 1206. 12.08, 12.11, or 12.15.  Likewise, Busz has not
produced a medical source opinion or other evidence supporting a more limiting mental RFC
during the relevant period than assigned by the ALJ.  "It is axiomatic that the claimant bears the
burden of supplying adequate records and evidence to prove [his] claim of disability."  *Scheck*,
357 F.3d at 702 (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5
(1987)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he
primary responsibility for producing medical evidence demonstrating the severity of
impairments remains with the claimant." (citing 20 C.F.R. § 416.912(c)).  Here, Busz has failed
to carry that burden, and thus, the ALJ's step-three determination and mental RFC are supported
by substantial evidence.

### F.  New Evidence

As a final matter, Busz submits additional evidence to the Court dated after the ALJ's
September 2019 decision and after the Appeals Council declined review in August 2020.  Thus,
Busz is apparently requesting a remand to consider new evidence pursuant to sentence six of 42
U.S.C. § 405(g).

The first piece of evidence is an October 2021 letter from Deepak Khemka, M.D., of
Parkview Behavioral Health, stating that Busz "has been admitted to PBH Beacon/Carew

20

multiple admissions.  10/11-21-Present, 09/20/21-09/25/21, 12-03/20-12/10/20, 02/20/18-

2/23/18, 01/05/18-01/09/18, 10/31/17-11/07/17, and 08/10/07/08/14/2017," that he suffers from

"Bipolar I disorder, depression, suicidal ideations and homelessness," and that he "is being

referred to outpatient services when he is stable."  (ECF 24 at 3).  Next is an April 2021 missed

appointment notice from Park Center.  (ECF 16 at 1).  Third are two April 2021 letters from a

past employer (Temporary Solutions, Inc.), stating that Busz had worked there for five days in

2016, and that he "has provided adequate proof . . . that due to his restrictions and dosage of

prescribed opiates, he is unemployable to [Temporary Solutions, Inc.,] at this time."  (*Id.* at 2-3).

Fourth is a December 2020 letter from Ahsan Mahmood, M.D., of Parkview Behavioral

Health, stating that Busz suffers from a bipolar disorder and chronic pain syndrome, and that

"[i]n his clinical opinion, [Busz] is disabled and unable to hold a job due to these conditions."

(*Id.* at 4).  And finally, Busz submits an October 2020 letter from Marlona K. Harting, D.O., of

Neighborhood Health, stating:

> Please re-consider my patient Bobby Busz for disability.  He has chronic pain of
> wrists, hip/pelvis and low back.  He takes a strong prescription medication and
> feels pelvic instability. [H]e cannot afford the cash required for a complete
> physical therapy assessment for disability . . . .  He has psychiatric problems
> including anxiety, bipolar and personality disorders.  His outbursts and temper
> control issues lead to social isolation.  Others easily give up on him or ask him to
> desist.  He is unemployable at this point.  He is not a good surgical candidate for
> his chronic pain problems.  He has seen numerous specialists and I am referring
> him back to psychiatry for a new mental health assessment.  If further investigation
> into his intellect is warranted perhaps a referral could be made for a neuropsych
> evaluation. . . .  I respectfully ask the court to reconsider his disability based on the
> prior assessments submitted.

(*Id.* at 5).

The sixth sentence of 42 U.S.C. § 405(g) permits a remand "only upon a showing that there

is new evidence which is material and that there is good cause for the failure to incorporate such

evidence into the record in a prior proceeding . . . ."  For sixth sentence purposes, "'materiality'

means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *see also Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).

Here, all of the evidence Busz submits was created after the ALJ's decision and the Appeals Council's review, and thus is "new" in that regard.  However, much of the evidence is simply derived from the evidence already of record, and thus, it is not new and "material."  *Compare Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988) (finding that a psychological evaluation performed after the ALJ's decision was new evidence as "it was not in existence at the time of the administrative proceedings"), *with Sample*, 999 F.2d at 1144 (emphasizing that a physician's report derived from medical evidence already in the record did not constitute new information); *see also Perkins*, 107 F.3d at 1296; *Harris v. Barnhart*, No. 03 C 3185, 2005 WL 1655202, at *15 (N.D. Ill. Apr. 26, 2005) ("Evidence is new if it is not merely cumulative." (citing *Sears*, 840 F.2d at 399)).  For example, Dr. Mahmood's and Dr. Harting's letters merely repeat diagnoses and medical information that is already of record, and then based on that past evidence, opine that Busz is disabled.  Nor are the missed appointment notice and letters from Temporary Solutions Inc., material because there is not a reasonable probability that the ALJ would have reached a different conclusion if this evidence was considered.  *See Perkins*, 107 F.3d at 1296.

The one exception is Dr. Khemka's letter indicating that Busz was hospitalized for his mental condition four times during the relevant period, rather than just one time as the ALJ stated in the decision.  (*Compare* ECF 24 at 3, *with* AR 24, 26).  This evidence is both "new"

and "material."  Nevertheless, Dr. Khemka's letter specifically states that "per [patient] request

we are writing this letter."  (ECF 24 at 3).  Busz does not explain why he did not request and

produce such a letter during the pendency of the administrative proceedings, much less produce

the medical records from the purported additional hospitalizations that occurred during the

relevant period.  Busz's failure to timely seek out and include this letter from Dr. Khemka and

the additional hospitalization records does not now constitute "good cause" under 42 U.S.C. §

405(g) for the belated submission.  "[S]uch a rule would amount to automatic permission to

supplement records with new evidence after the ALJ issues a decision in the case, which would

seriously undermine the regularity of the administrative process."  *Perkins*, 107 F.3d at 1296; *see*

*also Sample*, 999 F.2d at 1144; *Keys v. Barnhart*, No. 01 C 8334, 2002 WL 31369793, at *8-9

(N.D. Ill. Oct. 21, 2002); *Romanoski v. Sullivan*, No. 91 C 8113, 1992 WL 346417, at *8 (N.D.

Ill. Nov. 19, 1992) (failing to find good cause where claimant waited until after the ALJ's

opinion was rendered to seek out a psychological evaluation, offering no explanation for his

delay).

    In sum, the burden of meeting all of the requirements for a remand under sentence six of 42

U.S.C. § 405(g) lies with Busz.  *See Jens*, 347 F.3d at 214.  Busz has failed to carry that burden,

and thus while the Court will remand the case for the reasons discussed *supra*, a remand is not

warranted to consider new evidence pursuant to sentence six.[17]

---

[17] "Medical evidence postdating the ALJ's decision, *unless it speaks to the patient's condition at or before the time of the administrative hearing*, could not have affected the ALJ's decision and therefore does not meet the materiality requirement."  *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) (emphasis added) (citations omitted). "If [Busz] has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application" for SSI to the Social Security Administration. *Id.*; *see also Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989).

### IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is

REMANDED to the Commissioner for further proceedings in accordance with this Opinion and

Order.  The Clerk is DIRECTED to enter a judgment in favor of Busz and against the

Commissioner.

SO ORDERED.

Entered this 7th day of February 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge